UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MILES S. MITCHELL,                                               DECISION
                                                                   and
                                  Petitioner,                     ORDER
                 v.                                         -----------------------------
                                                                 REPORT
SUPERINTENDENT,                                                    and
                                                            RECOMMENDATION
                                  Respondent.
_____                    20-CV-1189JLS(F)

APPEARANCES:          MILES S. MITCHELL, *Pro se*
                      13-B-3347
                      Green Haven Correctional Facility
                      Box 4000
                      Stormville, New York  12582-0010

                      LETICIA A. JAMES
                      ATTORNEY GENERAL, STATE OF NEW YORK
                      Attorney for Respondent
                      MATTHEW B. KELLER
                      Assistant Attorney General, of Counsel
                      28 Liberty Street
                      15th Floor
                      New York, New York  10005


## JURISDICTION

        Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), this case was referred to the

undersigned by Honorable John L. Sinatra, Jr., on December 23, 2020, for all pretrial

matters necessary for a determination of the factual and legal issues presented herein.

The matter is presently before the court on Petitioner's motion filed May 23, 2022,

seeking to file an amended petition asserting two additional grounds on which habeas

relief is requested (Dkt. 35).[1]

_____
[1] Although Petitioner's motion to file an amended petition is nondispositive, *see Brady v. McCarthy*,  2021
WL 6427544, at *1 (W.D.N.Y. Sept. 30, 2021) ("Petitioner's motion to amend the Petition is

## BACKGROUND

On September 20, 2020, Petitioner Miles Mitchell, proceeding *pro se*, filed a Petition pursuant to 28 U.S.C. § 2254 for writ of habeas corpus challenging the constitutionality of his October 29, 2013 conviction by jury in New York Supreme Court, Monroe County ("trial court"), for two counts of second-degree murder (N.Y. Penal Law § 125.25[1], [3]), one count of attempted first-degree robbery (N.Y. Penal Law §§ 110.00, 160.15[4]), one count of attempted second-degree robbery (N.Y. Penal Law § 110.00, 160.10[1]), and two counts of second-degree criminal possession of a weapon (N.Y. Penal Law § 265.03[1](B)).  In connection with the conviction, Petitioner was sentenced as a second violent felony offender to an aggregated prison term of 25 years to life.  Petitioner appealed the conviction to the New York Supreme Court, Appellate Division, 4th Dept. ("Appellate Division"), which, on November 10, 2016, reserved decision on the appeal, and remanded the matter to the trial court with directions to hold a hearing pursuant to *People v. Huntley,* 204 N.E.2d 179 (N.Y.1965) ("*Huntley* hearing"), to determine whether Petitioner's pre-arrest inculpatory statements, which were admitted against Petitioner at trial, were voluntarily made and complied with Petitioner's right to the warnings required by *Miranda v. Arizona,* 384 U.S. 436 (1966) ("*Miranda*").  *People v. Mitchell*, 41 N.Y.S.3d 805 (4th Dept. 2016).  Upon remand, the trial court held the *Huntley* hearing, and on May 24, 2017, issued a decision (Dkt. 14-2 at 293-304) ("*Huntley* Decision"), concluding Petitioner's statements were voluntarily

---

nondispositive"), *report and recommendation adopted*, 2021 WL 5860720 (W.D.N.Y. Dec. 10, 2021); and *Chase v. LaManna*, 2021 WL 3485771, at *3 (W.D.N.Y. Aug. 9, 2021) (considering petitioner's motion to stay and hold habeas petition in abeyance as non-dispositive), because the undersigned is also reaching the merits of the Petition, both are addressed in this combined Decision and Order/Report and Recommendation.

made, were not in violation of *Miranda*, and should not be suppressed.  Petitioner filed a supplemental appeal challenging the *Huntley* Decision with the Appellate Division, Dkt. 14-2 at 271-89), which, on March 15, 2019, affirmed both the trial court's denial of suppression at the *Huntley* hearing, and Petitioner's conviction.  *People v. Mitchell*, 94 N.Y.S.3d 494 (4th Dept. 2019).  Leave to appeal to the New York Court of Appeals was denied on June 18, 2019.  *People v. Mitchell*, 129 N.E.3d 330 (N.Y. 2019).

On August 14, 2020, Petitioner filed in the United States District Court in the Northern District of New York, the instant petition seeking habeas relief pursuant to 28 U.S.C. § 2254, asserting four grounds for habeas relief including (1) the trial court improperly refused to conduct, pretrial, a *Huntley* hearing ("First Ground"); (2) the trial court erred in denying Petitioner's for cause challenges to potential jurors ("Second Ground"); (3) the trial court erred by allowing into evidence a prior bad act ("Third Ground"); and (4) Petitioner's murder conviction was against the weight of the evidence ("Fourth Ground").  Because Petitioner's conviction and sentence were imposed in New York Supreme Court, Monroe County, on September 2, 2020, the matter was transferred from the Northern District of New York to this court as the proper forum.

On October 13, 2020, Petitioner filed in the trial court a motion pursuant to N.Y. Crim. Proc. Law § 440.10 ("§ 440 motion") seeking to vacate his conviction based on a denial of due process because the *Huntley* hearing was not held until after the trial.  *See* Dkt. 14-2 at 333-44.[2]  On November 12, 2020, Petitioner filed in the trial court an addendum to the § 440 motion asserting Barback was acting as an agent of the police

---

[2] Petitioner also asserted issues not raised in connection with his Petition for habeas relief, including that the prosecutor withheld evidence, the felony complaint was defective, and a superseding indictment subjected Petitioner to double jeopardy.  Dkt. 14-2 at 333-344.

when Petitioner made incriminating statements which were recorded without Petitioner's knowledge or consent in violation of *Miranda*.  *See* Dkt. 14-2 at 345-50.

On December 18, 2020, Respondent filed a Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus (Dkt. 13) ("Respondent's Memorandum"), and an answer to the Petition (Dkt. 14) ("Answer"), attaching as exhibits the State Court Records (Dkts. 14-1 through 14-3).  On December 31, 2020, the trial court denied Petitioner's § 440 motion; Petitioner did not appeal the denial of his § 440 motion.

On March 22, 2021, Petitioner moved to file an amended petition (Dkt. 26) ("motion to amend"), and to stay the proceedings (Dkt. 27) ("motion to stay").  In a Decision and Order filed March 23, 2022 (Dkt. 33) ("D&O"), the undersigned denied the motion to amend because Petitioner failed to attach a copy of the proposed amended petition and it was not possible to discern the new grounds Petitioner sought to assert in an amended petition.  D&O at 4-5.  The motion to stay, requesting the Petition be held in abeyance while Petitioner filed a second § 440 motion asserting ineffective assistance of trial and appellate counsel was also denied because Petitioner failed to demonstrate the required good cause for failing to timely exhaust such claims, nor to sufficiently describe the putative claims to permit the court to determine whether such claims are potentially meritorious.  *Id*. at 5-7.

On May 23, 2022, Petitioner filed the instant motion seeking to amend the Petition to assert two additional grounds for habeas relief (Dkt. 35) ("Petitioner's Motion"), including that (1) certain statements of Petitioner should have been suppressed because they were made to an agent of the police without benefit of the *Miranda* warnings, and were involuntary ("first proposed ground"), and (2) the appellate

court improperly denied the suppression of an audiorecording made, without Petitioner's knowledge or consent, to the same agent of the police ("second proposed ground") (together, "proposed grounds").  Although Respondent was given until June 8, 2022 to file a response (Dkt. 36), later extended, at Respondent's request, to June 24, 2022 (Dkt. 38), to date, Respondent has not filed any response.  Oral argument was deemed unnecessary.

Based on the following Petitioner's Motion DENIED; the Petition should be DISMISSED.

## **FACTS**[3]

In the early hours of August 25, 2012, Petitioner Miles S. Mitchell ("Petitioner" or "Mitchell"), was with James Hillyard, Jr. ("Hillyard" or "JD")), and Terrell Cooper ("Cooper" or "Rel") (together, "co-defendants"), at Louie's Cordial Lounge, a bar ("Cordial" or "the bar"), in Rochester, New York.  Trial Tr.[4] 555-63, 660.  Also at the bar were Joshua Groat ("Groat" or "the victim"), Groat's best friend Jacob Trim ("Trim"), and Jacob Hunter ("Hunter").  Trial Tr. at 556-57.  Trim, Groat, and Hunter had driven to the bar in Trim's vehicle, a 2006 Dodge Charger with a custom-detailed paint job depicting the fictional comicbook hero Batman and on the driver's side and the Joker on the passenger side ("the Batman car").  Trial Tr. at 556-57, 587-88, 591.  At that time, Trim had been involved for three months in a sexual relationship with one Danielle Barback ("Barback"), who was Petitioner's ex-girlfriend and the mother of Petitioner's children.  Trial Tr. at 571.  Around 2:00 A.M., Trim walked outside the bar where he observed

---

[3] The salient Facts are taken from the Petition and State Court Records filed in this action.
[4] References to "Trial Tr." are to the pages of the transcript of Petitioner's criminal trial, conducted September 9 to 16, 2016, filed as Dkt. 14-3 at 152-1107.

Groat standing with his back to the bar, confronted by a mixed-race male in a blue hooded sweatshirt or "hoodie," later identified as Petitioner, and a white male in a black shirt, later identified as Hillyard.  Petitioner pulled out a handgun and demanded money from Groat, and Trim reacted by pulling on Petitioner's hoodie and punching Petitioner.  *Id*. at 558-67, 85.  During the ensuing struggle, the handgun discharged and Trim ran up the street, while Groat ran in the opposite direction with Petitioner, Hillyard and Cooper ("the assailants") in pursuit.  *Id*. at 568-69.

At the same time, one William Carter ("Carter") was working at a nearby used car lot ("used car lot"), located around the corner from the bar, and observed the assailants chase Groat into the used car lot where the men began beating Groat near a white truck.  534-36.  While the assailants were beating Groat, Carter heard two or three gunshots near the white truck.  Trial Tr. at 540-41.  When Carter screamed at the assailants, they fled and Groat tried to get up from the ground, but "made a sound" and collapsed, at which point Carter called 911.  *Id*. at 537-38, 550.  Video surveillance from the used car lot shows the assailants chasing Groat into the used car lot, with Hillyard pointing something toward Groat.  *Id*. at 538-40.  Although the video surveillance recording is not clear, motion is visible in the video's upper-left portion, along with Petitioner, Hillyard, and Cooper fleeing the scene.  *Id*.

Officers from the Rochester Police Department ("RPD") responded to Carter's 911 call with RPD Officer Kevin Smith ("Smith") the first to arrive at the used car lot where Smith observed Groat lying face down between two vehicles, with Groat's boots and some loose cash located nearby on the ground.  Trial Tr. at 380, 386.  Attempts by first responders to revive Groat were unsuccessful.  *Id*. at 570.  Groat's cause of death

was determined by the medical examiner to be a gunshot wound to his torso.  *Id*. at 924.  The medical examiner also observed Groat had a broken nose, abrasions on his forehead, eyebrow, lip and chin, and a "double semi-circular patterned" contusion on the back of his head and next which the medical examiner testified was consistent with blunt force trauma from a shoe or similar object.  *Id*. at 911-12, 922-24.

While the incident was transpiring, one Akil Lazarus ("Lazarus"), who had been inside a nearby bar, Smokin' Joes, exited the bar and was walking toward his truck that was parked between Smokin' Joes and the used car lot when Lazarus heard gun shots.  Trial Tr. at 845-47.  After Lazarus entered his truck, five men jumped into the truck including, *inter alia*, Petitioner, Hillyard, and Cooper with Petitioner entering the vehicle's front passenger seat and the remaining four entered the back seat.  *Id*. at 847-48.  Lazarus testified that Petitioner was wearing black pants and a blue "Marquee Vega" hoody with "a little man on the left side."  *Id*. at 848-49.  Lazarus recognized the blue hoody because he gave it to Petitioner a few weeks prior to August 25, 2012.  *Id*. at 849.  Lazarus described the men as "breathing heavy."  *Id*. at 850.  Lazarus drove the men to Hillyard's house and had no further contact with them that day.  *Id*. at 851.

Around 3:00 A.M. on August 25, 2012, approximately one hour after Groat was shot, Petitioner called Barback and told Barback that Petitioner "got" Barback's "little boyfriend," which Barback construed as referring to Trim, *i.e.*, the individual with whom Barback admitted having sexual relations, a situation about which Petitioner was aware.  Trial Tr. at 764, 766-68.  Petitioner, however, in response to Barback's questioning, did not want to discuss the situation on the phone and refused to elaborate as to what happened, although Barback believed Petitioner was referring to having killed Trim.  *Id*.

at 766-70.[5]   Barback testified that Petitioner said he saw the Batman car in front of the bar.  *Id*. at 770.  Later that morning, Petitioner went to Barback's house where Petitioner made several phone calls including one to a cousin inquiring whether there were security cameras in front of the bar, *i.e.*, Cordial, *id*. at 772-73, and another call to Hillyard with whom Petitioner discussed getting rid of their clothes from the previous night.  *Id*. at 774.  Petitioner then told Barback that Barback's "little boyfriend was gone. . . ," *id*. at 775, and that Petitioner had tried to rob and shoot Trim, but the gun did not discharge.  *Id*. at 777.  After Hillyard grabbed the gun from Petitioner and ran after the victim, Petitioner followed and saw the victim on the ground, and Petitioner then went through the victim's boots to see if he had anything of value inside them.  *Id*. at 778-79. Petitioner then left Barback's house, and Barback also left and went to her friend Megan's house.  *Id*. at 779-80.

Later in the day on August 25, 2012, investigators ("the investigators") with the Rochester Police Department ("RPD") contacted Barback at Megan's house and arranged for Barback to attempt to record Petitioner while giving Petitioner a ride in her vehicle.  Trial Tr. at 780-81.  The investigators hid two recording devices in Barback's vehicle which Barback, in the evening of August 25, 2012, then drove to pick up Petitioner at the home of Petitioner's friend, one "Steven," and proceeded to have a conversation with Petitioner.  *Id*. at 781-82.   Barback opened the conversation by advising Petitioner of a social media account of the attack on Groat was garnering a lot of attention and included comments that Petitioner was involved.  SCR[6] at 196-97.

---

[5] Although the record is not clear as to why Petitioner mistook Groat for Trim as the Appellate Division found, *Mitchell*, 41 N.Y.S.3d at 807, such mistaken identity is irrelevant to Petitioner's conviction.
[6] References to "SCR" are to the pages of the State Court Record of Petitioner's papers filed in connection with his direct appeal and § 440 motion, filed as Dkt. 14-2.  The recorded conversation was

During the conversation, Petitioner admitted attempting to rob Trim[7] in front of Cordial, but that Trim and Groat ran.  SCR at 196-97.  Barback mentioned the social media account indicated the attack was captured on a surveillance camera, *id*. at 197, and Petitioner responded there was no camera, and that even if there were, Petitioner was armed with only a "little ass gun" which the camera would not have captured.  *Id*. Barback mentioned the social media account reported the victim was beaten and shot to death, and the video showed Petitioner going through the victim's boots, and Barback questioned how Petitioner could have gone through the victim's boots if Petitioner was not present during the incident when the victim was assaulted and killed ("the incident"), yet Petitioner insisted he was only trying to rob the victim, first in front of the bar and then in the used car lot.  *Id*. at 197-98.  Petitioner then, without being questioned by Barback, repeated his belief there was no camera, to which Barback responded that she was concerned that Petitioner could be incarcerated if seen with a gun, *id*. at 198, adding that Petitioner would not be suspected of participating in the incident if Petitioner did not attempt to rob the victim and later approach the victim's body, *id*. at 199, to which Petitioner responded that the incident would not have occurred if the victim's friend had not punched Petitioner, with Barback reminding Petitioner that the victim's friend punched Petitioner because Petitioner pulled a gun on the victim.  *Id*.  At this point in the conversation, Petitioner told Barback to drive straight, but Barback insisted on going another way to avoid driving by a parking lot where police officers tended to sit

---

played at trial, Trial Tr. at 788, and a transcript of the recorded conversation was filed as part of the SCR as Trial Exhibit 6.  SCR (Dkt. 14-2) at 196-200.
[7] Petitioner's statements during the recorded conversation strongly suggest Petitioner believed that Trim, and not Groat, was the victim Petitioner tried to rob and later beat and killed.  *See, e.g.*, SCR at 197 (Barback stating Groat was dead, and Petitioner responding "or the other guy," referring to Trim whom Petitioner believed was the victim).

in their patrol vehicles.  *Id*. at 199-200.  Barback dropped Petitioner off at his mother's house and then drove away to a preselected location where Barback met with the investigators who removed the recording equipment from Barback's vehicle.  Trial Tr. at 789.

On March 18, 2013, Petitioner, along with Hillyard and Cooper, was criminally indicted by a Monroe County grand jury in connection with Groat's death on two counts of murder in the second degree, one count each of attempted robbery in the first degree and in the second degree, and two counts of criminal possession of a weapon in the second degree ("the criminal charges").  On March 20, 2013, Petitioner was arraigned on the criminal charges in New York Supreme Court, Monroe County ("the trial court"), before Monroe County Court Justice Vincent M. Dinolfo ("Justice Dinolfo").  Petitioner was represented at arraignment and through trial and sentencing by assigned counsel, Karen Bailey-Turner ("Bailey-Turner"), and the case was prosecuted by Assistant Monroe County District Attorney Perry Duckles ("Duckles").  On July 15, 2013, a pretrial *Wade*/*Huntley* hearing[8] was held before New York Supreme Court Justice Thomas E. Moran ("Justice Moran").  Dkt. 14-3 at 18-136.  At the *Wade*/*Huntley* hearing, Bailey-Turner informed the court that although the prosecutor had noticed a statement made by Petitioner to an unidentified agent of the police, because the agent was under police protection, Petitioner were in no position to argue the *Huntley* portion of the hearing that day, but renewed Petitioner's motion to exclude such evidence.  Dkt. 14-3 at 22-24.

---

[8] A *Wade* hearing is used to determine whether a witness identification procedure was unduly suggestive. *See United States v. Wade,* 388 U.S. 218, 232 (1967). A *Huntley* hearing is used to determine whether a defendant's statements to law enforcement were voluntary. *See People v. Huntley,* 204 N.E.2d 179 (N.Y. 1965).

Justice Moran then ruled the protective order against the unidentified police agent witness would stand, but noted Petitioner's continuing objection. *Id*. at 26-27.  On August 30, 2013, Justice Moran rendered a decision from the bench.  Dkt. 14-3 at 137-151.  Just prior to rendering the decision, Justice Moran permitted Bailey-Turner, who had learned on August 28, 2013, that the identity of the police agent was Barback, to again request suppression of the recorded statements, a transcribed copy of which Bailey-Turner obtained and reviewed on August 29, 2013.  *Id*. at 140-42.  Justice Moran, however, never actually held the requested *Huntley* hearing and, as such, made no determination on the matter.

On September 9, 2013, Petitioner's trial on the criminal charges commenced before Justice Moran, and continued through September 16, 2013, when Petitioner was convicted on all counts.  Dkt. 14-3 at 154-1257.  On October 29, 2013, Petitioner was sentenced by Justice Moran to consecutive terms of incarceration ranging from 15 years to life.  kt. 14-3 at 1258-178.

Following his conviction, Petitioner was assigned new counsel, Shirley A. Gorman ("Gorman"), and on January 10, 2019, Petitioner filed an appeal challenging as improper the trial court's denial of Petitioner's request for a *Huntley* hearing to determine whether the statements Petitioner made to Barback during the car ride following the incident were voluntary, *see* Brief for Appellant (Dkt. 14-2 at 7-59), at 14-20, the trial court erred in denying Petitioner's challenges to three prospective jurors for cause, *id*. at 21-29, the trial court erroneously allowed the prosecutor to introduce evidence concerning a prior incident of violence involving Petitioner and Barback, as well as a threatening phone call to Barback's boyfriend, *id*. at 30-37, the verdict was

against the weight of the evidence, *id*. at 38-41, and the sentence imposed for the

conviction was unduly harsh.  *Id*. at 42-45.  On November 10, 2016, the Appellate

Division held that the trial court erred in failing to grant the request by Petitioner's

defense attorney for a *Huntley* hearing to determine whether the recorded statements

Petitioner made to Barback, an agent of the police, and which were the subject of a

protective order until two weeks before trial, should be suppressed as involuntarily

made or made in violation of *Miranda* or Petitioner's right to counsel, and rejected the

remaining issues raised by Petitioner on the direct appeal.  *Mitchell*, 41 N.Y.S.3d at 808.

The matter was remanded to the trial court where, on March 27, 2017, Justice Moran

held a *Huntley* hearing, reserving decision.  On May 24, 2017, Justice Moran issued a

decision on the *Huntley* hearing, finding that when Barback gave Petitioner a car ride

and recorded Petitioner's statements, Barback was acting as an agent of the police,

*People v. Mitchell*, No. 2013-0211C, slip op. at 6-7 (N.Y. Sup. Ct., Monroe Cty, May 24,

2017) ("*Huntley* Decision"),[9] but that there was no credible evidence that Barback was

coerced or threatened into eliciting statements from Petitioner, *id*. at 7-8, Petitioner's

statements were voluntarily made, *id*. at 8-9, were not in violation of Petitioner's

constitutional rights and thus did not require *Miranda* warning, *id*. at 10-11, and

Barback's consent rendered the audiorecording of Petitioner's statements permissible.

*Id*. at 11.  Accordingly, Petitioner's motion for suppression of his statements to Barback

which Barback, acting as an agent of the police recorded, was denied.  *Id*  On October

18, 2018, Petitioner filed a post-remand appeal of his conviction, challenging the trial

court's *Huntley* Decision that the statements Petitioner sought to suppress were made

---

[9] A copy of the *Huntley* Decision is filed with the State Court Record, Dkt. 14-2 at 293 – 304).

voluntarily and without coercion.  Brief for Defendant-Appellant (SCR at 271-87) at 9-14.
On March 15, 2019, the Appellate Division affirmed the *Huntley* Decision.  *Mitchell*, 94
N.Y.S.3d 494.

On March 28, 2019, Petitioner filed for leave to appeal his conviction to the New
York Court of Appeals, asserting as grounds for relief (1) the trial court erred by denying
for-cause challenges Petitioner raised to three potential jurors, (2) the trial court
erroneously allowed the introduction of evidence of a prior incident of violence between
Petitioner and Barback, and (3) the Court of Appeals should consider whether
statements made by Petitioner to Barback were given freely and voluntarily in light of
Barback's statements that were designed to elicit incriminating statements from
Petitioner.  Dkt. 14-2 at 324-28.  Leave to appeal was denied on June 18, 2019.  *People
v. Mitchell*, 129 N.E.3d 330 (2019) (table).

After filing the instant Petition, on October 13, 2020, Petitioner filed in the trial
court a motion pursuant to N.Y. Crim. Proc. Law § 440.10 ("§ 440 motion") seeking, as
relevant to the Petition, to vacate his conviction based on a denial of due process
including that the *Huntley* hearing regarding the admissibility of his statements was held
three years after trial.  *See* Dkt. 14-2 at 333-44 (Petitioner's Notice of Motion for
Collateral Post Conviction Relief, CPL 440.10).  On November 12, 2020, Petitioner filed
in the trial court an addendum to the § 440 motion asserting that a confidential informant
acted as an agent for the police in holding a conversation with Petitioner which was
recorded without Petitioner's knowledge or consent, such that the incriminating
statements Petitioner made during the conversation should be suppressed as made
without warnings in violation of *Miranda*.  *See* Dkt. 14-2 at 345-50 (Affidavit [of

Petitioner] of Support of Addendum for Collateral Post Conviction Relief for CPL 440.10. By order dated December 31, 2020, the trial court denied Petitioner's § 440 motion. Petitioner did not appeal the denial of his § 440 motion.

## DISCUSSION

### 1.    Motion to Amend

Initially, the court observes the title of Petitioner's Motion is "Notice of Motion for Final Addendum for Federal Habeas," Petitioner's Motion at 1, yet Petitioner states he is seeking to add additional "issues," *i.e.*, claims, to his habeas petition. *Id.* Accordingly, the undersigned treats Petitioner's Motion as seeking leave to file an amended petition. *See Porter v. Conway*, 2009 WL 4280379, at *8 (W.D.N.Y. Nov. 24, 2009) (treating habeas petitioner's request to file an addendum to the petition for writ of habeas corpus as a motion for leave to file an amended petition). Petitioner moves to amend the Petition to assert two additional grounds for habeas relief including (1) statements Petitioner made to Barback, an agent of the police, were involuntarily and given without benefit of the *Miranda* warnings; and (2) the Appellate Division improperly denied the motion to suppress the audiorecording of Petitioner, made by Barback who was acting as an agent of the police. Petitioner's Motion at 1. Respondent did not file any papers opposing Petitioner's Motion.

As with Petitioner's earlier motion to amend, Petitioner failed to attach to the motion, or to otherwise provide, a copy of the proposed amended petition as required by Local Rules of Civil Procedure – W.D.N.Y. Rule 15 ("Local Rule 15"). "Because a motion to amend is not a successive habeas petition . . ., the standard for granting or denying a motion to amend is governed by Federal Rule of Civil Procedure 15(a)." *Graham v.*

*United States of America*, 2021 WL 2983070, at * 5 (W.D.N.Y. July 9, 2021) (citing *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001)). Rule 15(a) provides that "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). A district court may properly deny leave to amend, however, where the petitioner fails to attach a copy of the proposed amended petition such that it is not possible to discern what amendments are proposed. *See McCray v. Griffin*, 2021 WL 4437169, at * 2-3 (W.D.N.Y. Sept. 28, 2021) (denying habeas petitioner's motion to amend where proposed amended petition was not provided). In the instant case, Petitioner's self-titled "Addendum" does allow the court to discern what amendments Petitioner seeks to assert. Nevertheless, the motion must be denied because the Proposed Grounds are futile because the proposed claims are time-barred.

"The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with "leave of court" any time during a proceeding." *Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("*Mayle*") (citing Fed. Rule Civ. Proc. 15(a) ("Rule 15__")). "Before a responsive pleading is served, pleadings may be amended once as a "matter of course," *i.e.,* without seeking court leave." *Id*. (citing Rule 15(b)). After a responsive pleading is filed, an amendment may be made only with leave of the court and "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(c).

Under Rule 15, a motion for leave to amend should be denied only where there is "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility[.]" *Monahan v. New York City Dep't of Corr.,*

214 F.3d 275, 283 (2d Cir.2000) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).
*See also Ching v. United States,* 298 F.3d 174, 180 (2d Cir.2002) (motion for leave to
amend habeas petition under Rule 15 may be denied where necessary to thwart
dilatory, unfairly prejudicial, or otherwise abusive tactics, or where amendment would be
futile).  In the habeas context, the discretion to deny leave to amend serves to
"safeguard[ ] against the possibility that Rule 15's amendment procedures will be
exploited by petitioners for the purpose of undermining the rules designed to prevent
abuse of the writ, regardless of the procedural posture of the case at the time the
motion to amend is brought."  *Id.*

　　　　With regard to the timeliness of Petitioner's proposed claims, Petitioner's
Proposed Claims are subject to the one-year limitations period provided by the Anti-
terrorism and Effective Death Penalty Act ("AEDPA").  28 U.S.C. § 2244(d)(1)(A)
("§ 2244(d)(1)(A)") (providing "[a] 1-year period of limitation shall apply to an application
for a writ of habeas corpus by a person in custody pursuant to the judgment of a State
court.").  The one-year limitations period applicable to habeas petitions "'runs from the
latest of a number of triggering events, including the date on which the judgment
became final by the conclusion of direct review or the expiration of the time for seeking
such review.'"  *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir.
2015), *as corrected* (Nov. 12, 2015) (quoting *Rivas v. Fischer,* 687 F.3d 514, 533 (2d
Cir. 2012) (internal quotation omitted)).  In particular, "the AEDPA limitations period
specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct
appellate review in the state court system and either the completion of certiorari
proceedings in the United States Supreme Court, or — if the prisoner elects not to file a

petition for certiorari — the time to seek direct review via certiorari has expired."
*Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

In the instant case, although the proposed claims were exhausted on direct appeal, Petitioner failed to assert the proposed claims in the Petition as grounds for habeas relief.[10]  Petitioner's conviction became final on September 16, 2020, *i.e.*, with the expiration of the 90-days measured from the June 18, 2019 denial of Petitioner's request for leave to appeal to the New York Court of Appeals in which Petitioner was to petition for *certiorari*, but did not. *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005) (considering, for purposes of habeas corpus limitations period, state court conviction to be final 90 days after Court of Appeals denied leave to appeal where petitioner did not petition for *certiorari* from the Supreme Court).  *See also Hizbullahankhamon v. Walker*, 255 F.3d 65, 68 (2d Cir. 2001) (acknowledging habeas petitioner's state court conviction became final on "the date on which the time to petition for *certiorari* to the Supreme Court of the United States expired.").  Petitioner's filing of the Petition on August 14, 2020, did not toll the one-year limitations period.  *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding the filing of a federal habeas petition does not toll the limitations period).  Nor does Petitioner's filing on October 13, 2020, after the one-year limitations period for his § 440 Motion seeking post-conviction relief on the proposed grounds had elapsed on September 16, 2020, reset or restart the limitations period.  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (holding that although the filing for state post-conviction relief during the one-year statute of limitations period

---

[10] Petitioner's challenge to the incriminating statements made to Barback is limited to an alleged denial of due process based on the trial court's refusal to hold the *Huntley* hearing when requested by defense counsel during the trial, such that the *Huntley* hearing was not held until after the trial at the direction of the Appellate Division.  Petition, First Ground.

under the AEDPA will trigger the tolling allowance under 28 U.S.C. § 2244(d)(2), the filing for state post-conviction relief *after* the one-year limitations period has expired does not reset the date from which the one-year statute of limitations runs).  Moreover, Petitioner had 30 days to appeal the § 440 Decision after it was entered on December 31, 2020, but Petitioner has not done so; nor did Petitioner move for an extension for applying for leave to appeal pursuant to N.Y. Crim. Proc. Law § 460.30(1) (requiring motion for extension of time for applying for leave to appeal "must be made with due diligence after the time for the taking of such appeal has expired, and in any case not more than one year thereafter.").  Significantly, as Respondent asserted in opposing Petitioner's earlier motion requesting the court hold the Petition in abeyance, Dkt. 29 at 5, as of May 20, 2021, Petitioner had not sought a court-ordered extension of time to appeal the § 440 Decision, and the court's search of the New York Supreme Court's on-line database does not show any action by the Appellate Division, Fourth Department on any appeal of the § 440 Decision.  Nor do Petitioner's proposed claims relate back to those claims asserted in the Petition so as to avoid the AEDPA's limitations period.

"Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the [same] conduct, transaction, or occurrence.'"  *Mayle*, 545 U.S. at 655 (quoting Rule 15(c)(2)). "Rule 15(c)(2), as earlier stated, provides that pleading amendments relate back to the date of the original pleading when the claim asserted in the amended plea 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.' The key words are 'conduct, transaction, or occurrence.'"  *Id*. at 656 (quoting Fed.R.Civ.P. 15(c)(2)).  The proposed claims to be added by amendment will

relate back to the habeas petition's timely filed claims if they "arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id*. at 657 (quoting *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) ("[W]hile amendments that expand upon or clarify facts previously alleged will typically relate back, those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." (citing 6A Wright & Miller § 1497, at 84; and *Bowles v. Reade,* 198 F.3d 752, 762 (9th Cir.1999) ("If the amended complaint alleged a new claim for relief that arose out of different conduct or transactions it would not relate back to the original complaint.")).  Significantly, in *Mayle*, the Supreme Court held that a habeas petitioner's motion to amend his petition to add a claim targeting his statements in a pretrial interrogation did not relate back to the date of the original petition, which targeted the admission into evidence of videotaped testimony of a witness for the prosecution.  *Mayle*, 545 U.S. at 661.  Rather, the proposed claim regarding statements made in a pretrial interrogation sought to raise self-incrimination concerns regarding whether the petitioner's claims were made voluntarily or were coerced, whereas the claim asserted in the petition challenging the admission of a witness's videotaped testimony raised a confrontation issue.  *Id*.

Similarly, in the instant case, the Petition's First Ground asserts a Fourteenth Amendment due process challenge to the timing of the *Huntley* hearing, which was not held when first requested by Petitioner's counsel at trial, but only upon remand by the Appellate Division after Petitioner was convicted and sentenced on the criminal charges.  In contrast, Petitioner's first proposed claim regarding the statements made to

Barback, who was then acting as an agent of the police, asserts self-incrimination in violation of the Fifth Amendment, and denial of the right to counsel in violation of the Sixth Amendment.  Petitioner's second proposed claim pertaining to the audiorecording of Petitioner's statements without his knowledge or consent raises a Fourteenth Amendment due process claim, albeit one arising from a separate core of facts than Petitioner's First Ground concerning the timing of the *Huntley* hearing.  Accordingly, Petitioner's proposed claims do not relate back to the original petition.

Because the claims asserted in the § 440 proceeding are time-barred, they may not be asserted unless Petitioner can establish the limitations period was equitably tolled.  *See Martinez v. Superintendent of Eastern Correctional Facility*, 806 F.3d 27, 31 (2d Cir. 2015) ("A petitioner may secure equitable tolling of the limitations period in certain 'rare and exceptional circumstance[s].'" (quoting *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks omitted), and citing *Holland v. Florida,* 560 U.S. 631, 649 (2010))).  To secure equitable tolling, "[t]he petitioner must establish that (a) 'extraordinary circumstances' prevented him from filing a timely petition, and (b) he acted with 'reasonable diligence' during the period for which he now seeks tolling." *Id.* (quoting *Smith,* 208 F.3d at 17).  In the instant case, Petitioner can establish neither.

Specifically, as discussed above, both of Petitioner's proposed grounds were presented to the Appellate Division and the Court of Appeals in connection with Petitioner's direct appeal of his conviction.  The exhaustion of the proposed grounds on direct appeal establish Petitioner was aware of the grounds and could have asserted them in his timely-filed Petition.  Petitioner thus cannot establish equitably tolling to belatedly assert the proposed grounds.

Measuring the one-year limitations period from the date Petitioner's conviction became final on September 16, 2019, the proposed claims are time-barred, *i.e.*, proffered October 13, 2020 through Petitioner's § 440 motion, more than one year after September 16, 2019, under 28 U.S.C. § 2244(d)(1)(A), the proposed claims would not relate back to the original pleadings, and Petitioner cannot establish equitable tolling. Accordingly, Petitioner's Motion is DENIED.  Further, because the defects in the Petition cannot be cured with an amendment, the denial of Petitioner's Motion is with prejudice and without leave to amend.

## 2.    Habeas Review Standard

Petitioner seeks habeas corpus relief on four grounds including (1) the trial court improperly refused to conduct, pretrial, a *Huntley* hearing regarding statements Petitioner made to an agent of the police, Petition, First Ground; (2) the trial court erred in denying Petitioner's challenges, for cause, to three potential jurors requiring Petitioner to exercise peremptory challenges to prevent the potential jurors from being seated on the jury, *id*., Second Ground; (3) the trial court erred by allowing into evidence of two prior bad acts, *i.e.*, a violent attack involving Petitioner and Barback, and an anonymous threatening phone call received by Trim, *id*., Third Ground; and (4) Petitioner's intentional  murder conviction was against the weight of the evidence, *id*., Fourth Ground. Respondent argues in opposition to habeas relief that the Apellate Division granted the subject *Huntley* hearing and no further relief on the First Ground is available, Respondent's Memorandum at 16-18; Petitioner's Second Ground regarding the denial of three potential jurors for cause does not state a constitutional claim, *id*. at 19-20; Petitioner's Third Ground challenging the admission of evidence of prior bad acts

is barred by adequate and independent state law grounds, *id*. at 21-24, and evidentiary questions are matters of state law raising no federal constitutional issues for habeas review, *id*. at 24-29; and the Fourth Ground challenging the weight of the evidence for Petitioner's second degree intentional murder conviction is not cognizable on habeas review, *id*. at 29-30, and in any event is meritless.  *Id*. at 30-33.

In reviewing habeas petitions, a federal court is not permitted to act as an appellate court to review matters within the jurisdiction of the state courts, or review specific rulings and decisions of state trial and appellate courts not involving federal constitutional claims; rather, the court is to determine whether the proceedings in the state court, as challenged by a habeas petition, amount to a violation of the Petitioner's federal constitutional rights as declared by the Supreme Court.  28 U.S.C. § 2254(d)(1); *Coleman v. Thompson,* 501 U.S. 722, 730 (1991) ("When a federal district court reviews a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States'" (quoting 28 U.S.C. § 2254(a)), *reh'g denied,* 501 U.S. 1277 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).  Accordingly, federal review of state court convictions is limited to errors of such federal constitutional magnitude they necessarily deny the criminal defendant the right to a fundamentally fair trial.  *Cupp v. Naughton,* 414 U.S. 141, 147 (1973).

Pursuant to § 2254, as amended by the AEDPA, a federal court must give substantial deference to a state court determination that has "adjudicated [the federal constitutional claim] on the merits."  28 U.S.C. § 2254(d); *Sellan v. Kuhlman,* 261 F.3d 303, 309–10 (2d Cir. 2001).  The AEDPA requires that where a state court has

adjudicated the merits of a petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) ("§ 2254(d)").

Under *Williams v. Taylor,* 529 U.S. 362, 364 (2000), a federal habeas court may grant relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Id.*  This AEDPA requirement for habeas relief applies to petitions filed on or after the statute's April 24, 1996 effective date, *see, e.g., Williams,* 529 U.S. at 402; *Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Smith v. McGinnis,* 208 F.3d 13, 15 (2d Cir.2000) (*per curiam* ), *cert. denied,* 531 U.S. 840 (2000), and thus applies to the Petition.  State court decisions involve unreasonable application of Supreme Court caselaw where such decisions "identif[y] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case."  *Id.*  A federal habeas court must therefore apply the § 2254(d) deferential review standard where the state court has "adjudicated [the federal claim] on the merits," 28 U.S.C. § 2254(d), and, in instances where claims have not been adjudicated on the merits, apply the pre-AEDPA *de novo* review standard, even where the petition was filed after the effective date of the statute. *Sellan,* 261 F.3d at 314; *Boyette v. Lefevre,* 246 F.3d 76, 89, 91 (2d Cir.2001).

Pursuant to 28 U.S.C. § 2254(e) (" § 2254(e)"), formerly 28 U.S.C. § 2254(d), the state court's determination as to evidentiary matters is presumed correct, unless the federal habeas court concludes that the relevant state court determination is not fairly supported by the record, *Sumner v. Mata,* 449 U.S. 539, 546–47 (1981), and it is the burden of the petitioner to establish, by clear and convincing evidence, that the court's factual determination is erroneous.  28 U.S.C. § 2254(e)(1).  Section 2254(e), applies by its terms, "to factual determinations made by state courts, whether the court be a trial court or an appellate court." *Sumner,* 449 U.S. at 547.

In this case, with regard to the Petition, the court is in possession of the complete State Court Record, including the motions, hearings and trial transcripts, and briefs filed in connection with Petitioner's direct appeal to the Appellate Division as well as pertaining to the remand for the *Huntley* hearing and subsequent appeal of the *Huntley* Decision, and the § 440 motion papers and decision.  Petitioner has not requested that the court conduct an evidentiary hearing prior to resolving his claims as alleged in the Petition and does not otherwise challenge the record as inaccurate.  Accordingly, the court finds an evidentiary hearing unnecessary.

**3.     Merits of Petitioner's Claims**

> **A.     *Huntley* Hearing**

Petitioner's First Ground for habeas relief alleges the trial court improperly declined Petitioner's request to reopen the *Huntley* hearing when the prosecutor disclosed that Barback recorded statements Petitioner made to Barback when she gave him a ride on August 25, 2012, after the incident.  Petition, First Ground.  As

Respondent argues, however, Respondent's Memorandum at 16-18, this ground is unexhausted and is now procedurally barred.

Specifically, Petitioner included this claim in his direct appeal to the Appellate Division, who agreed with Petitioner and remanded the matter to the trial court to hold the requested *Huntley* hearing to determine whether Barback was acting as an agent of the police when Petitioner made the subject statements, whether the statements were coerced or voluntary, whether the statements should have been accompanied by warnings pursuant to *Miranda*, and whether Barback's audiorecording of the statements made at the behest of the police violated Petitioner's rights.  Upon remand to the trial court, the *Huntley* hearing was conducted by Justice Moran who, on May 24, 2017, issued the *Huntley* Decision, finding Barback was acting as an agent of the police when Petitioner made the subject statements, but that the statements were voluntary and did not require warnings pursuant to *Miranda*, nor did the recording of the statements without Petitioner's consent violated Petitioner's constitutional rights, and Justice Moran denied Petitioner's motion to suppress the statements.  *Huntley* Decision at 7-11.  On October 18, 2018, Petitioner challenged the *Huntley* Decision in a post-remand appeal, Brief for Defendant-Appellant (SCR at 271-87) at 9-14, but not the fact that the *Huntley* hearing was held after Petitioner was convicted rather than ordering a new trial, and on March 15, 2019, the Appellate Division affirmed the *Huntley* Decision.  *Mitchell*, 94 N.Y.S.3d 494.  When Petitioner filed for leave to appeal to the New York Court of Appeals on March 28, 2019, Petitioner requested review of, *inter alia*, the Appellate Division's decision affirming the *Huntley* Decision, Dkt. 14-2 at 324-28. Petitioner did not, however, also challenge that the holding of the *Huntley* hearing after Petitioner's

conviction and failure to order a new trial violated his constitutional rights, *see* Dkt. 14-2 at 324-28, and, thus, the Court of Appeals did not have the opportunity to address the issue.

"In New York, to invoke 'one complete round of the State's established appellate review process,' a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999), and citing *Morgan v. Bennett,* 204 F.3d 360, 369 (2d Cir. 2000), and N.Y.Crim. Proc. Law § 460.20 (McKinney 1994)).  The application for leave to the Court of Appeals may be in letter form. *Id.* (citing New York Court Rules § 500.10(a) (McKinney 1999)).  New York Court rules require that leave applicants submit to the Court of Appeals briefs and other documents from the lower courts to "identify the issues on which the application is based" and to pay "[p]articular written attention ... to identifying problems of reviewability and preservation of error." *Id.* (quoting N.Y. Court Rules § 500.10(a)).  Where an application for leave to appeal to the New York Court of Appeals fails to include claims "pressed to the Appellate Division below," such claims are considered "procedurally defaulted for habeas purposes because of the petitioner's failure to exhaust the claims properly before the state's highest court." *Galdamez*, 394 F.3d at 74 (citing *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991)).  In contrast, where a leave application requests review of all the issues outlined in the legal memoranda presented to the Appellate Division, all such claims are considered to have been

presented for review to the Court of Appeals, New York's highest court, and, thus, exhausted for purposes of subsequently seeking habeas relief.  *Id.*, 394 F.3d at 76-77.

In the instant case, although Petitioner's letter application seeking leave to appeal to the Court of Appeals does assert "leave is sought to appeal all the issues raised in the Brief for Defendant-Appellant and Supplemental Brief of the Defendant-Appellant filed in the Appellate Division, Fourth Department relating to [Petitioner's] conviction . . .," Dkt. 14-2 at 324, because the issue asserted as the Second Ground in the Petition, *i.e.*, Petitioner's challenge to the timing of the *Huntley* Hearing, *i.e.*, after Petitioner's trial, was not presented to the Appellate Division, Dkt. 14-2 at 324-28, and therefore also was not presented to the Court of Appeals, the issue is not exhausted and is not properly before the court for habeas relief.  Further, relevant New York law provides that if a habeas claim can be resolved on the record on direct appeal, but the defendant appealing his conviction fails to raise the issue, the defendant cannot, as a habeas petitioner, raise the same claim on a post-conviction motion such as a § 440 motion.  N.Y. Crim.Pro.Law § 440.10[2](c).  Moreover, as discussed above, Discussion, *supra*, at 17-18, even if Petitioner could raise the substance of his First Ground in a further motion pursuant to § 440, the subsequent § 440 motion would not restart the one-year limitations period under the AEDPA.

Petitioner's Second Ground should be DISMISSED.

### B.    For-Cause Jury Challenges

Petitioner's Second Ground alleges that during *voir dire*, the trial court improperly denied three "for cause" challenges to prospective jurors, causing Petitioner to have to use three peremptory challenges to prevent the jurors from being seated.  Petition,

Second Ground.  In opposition, Respondent argues that Petitioner's failure to allege any seated juror was biased or impartial requires dismissal of the Second Ground. Respondent's Memorandum at 19-20.

A trial court's denial of a for-cause challenge of a prospective juror can provide a ground for habeas relief where the defendant must use a peremptory challenge to prevent the prospective juror from being seated, resulting in the defendant being tried before a jury that is not impartial.  *See Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) ("So long as the jury that sits is impartial, the fact that the petitioner had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."). Nor is the loss of a peremptory challenge a constitutional violation of Petitioner's right to an impartial jury.  *See Rivera v. Illinois*, 556 U.S. 148, 152 (2009) ("peremptory challenges of not of federal constitutional dimension"); *Cruz v. Jordan*, 357 F.3d 269, 271 (2d Cir. 2004) ("[T]he Supreme Court has made clear, at least in the criminal context, that a party's use of a peremptory strike to cure a court's erroneous failure to dismiss a juror 'for cause' effects neither a constitutional nor a rule-based deprivation, as long as the jury eventually empaneled is impartial.").  "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  *Ross*, 487 U.S. at 88 (citing cases).

In the instant case, Petitioner does not assert the jury or any particular seated juror was not impartial and, thus, does not allege any violation of Petitioner's right to an impartial jury.  Accordingly, Petitioner's Second Ground should be DISMISSED.  *See Ross*, 487 U.S. at 88 (denying petitioner habeas relief on the alleged ground that the

trial court violated the petitioner's rights under the Sixth or Fourteenth Amendment to an impartial jury by improperly denying the petitioner's for-cause challenges to prospective jurors, causing the petitioner to use peremptory challenges to prevent such jurors from being seated, where the petitioner did not suggest any of the seated jurors was biased or not impartial).

### C.    Prior Bad Acts

Petitioner's Third Ground seeks habeas relief based on the trial court's permitting the prosecutor to introduce evidence of an asserted act of violence by Petitioner against Barback, as well as testimony by Trim about an anonymous and threatening telephone call Trim received shortly before the incident.  Petition, Third Ground.  In opposition, Respondent argues neither evidentiary ruling by the trial court presents a federal issue cognizable on habeas review.  Respondent's Memorandum at 21-29.

Insofar as Petitioner challenges as unconstitutional the introduction into evidence Trim's trial testimony that the day before the incident, Trim received an anonymous phone call, a review of the trial transcript establishes that Petitioner entered a hearsay objection to Trim's testimony about the content of the phone call, including that Trim believed the call was from Petitioner, and that Petitioner was inquiring about Trim's relationship with Barback, and when Trim admitted to having a sexual relationship with Barback, Petitioner threatened Trim with physical violence.  Trial Tr. at 571-74.  Justice Dinolfo sustained Petitioner's objection, *id*. at 574-75, and permitted the prosecutor to ask Trim only whether Trim "receive[d] a phone call prior to August 25, 2012 from an individual [Trim] did not know?"  *Id*. at 575.  Accordingly, Justice Dinolfo did not allow into evidence Trim's testimony regarding Trim's belief that Petitioner placed the call and

physically threatened Trim for being sexually involved with Barback, *id*., and there is thus no viable claim as to this aspect of the Third Ground.  Furthermore, insofar as Petitioner asserts any constitutional violation based on the prosecutor's inquiring only as to whether Trim received a phone call prior to August 25, 2012, from an individual Trim did not know, *id*. at 575, as the Appellate Division held on direct appeal, *Mitchell*, 41 N.Y.S.3d at 807, Petitioner did not contemporaneously object to the question and, as such, the question was not preserved for review.

In particular, "New York's 'preservation rule ... requires defense counsel to lodge a contemporaneous and specific objection to any alleged legal error in order to preserve the issue for appellate review.'"  *Cherry v. New York*, 521 F. Supp. 3d 295, 304 (W.D.N.Y. 2021) (quoting *Ali v. Unger*, 2014 WL 257270, *4 (W.D.N.Y. 2014) (citing N.Y. Crim. Proc. Law § 470.05(2)).  "'Codified at [N.Y. Criminal Procedure Law] § 470.05(2), the contemporaneous objection rule require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error.'"  *Id*. (quoting *Ali*, 2014 WL 257270 at * 4).  "Moreover, the Second Circuit has 'held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule.'"  *Id*. (quoting *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011), *cert. denied*, 566 U.S. 1014 (2012)).  Here, because the trial transcript fails to show that Petitioner's trial counsel made a "contemporaneous and specific objection" to the prosecutor's question, limited to whether Trim received a phone call prior to August 25, 2012, from an unknown individual, the court is procedurally barred from reaching the

issue on habeas review, *id*. at 304-05, absent a showing of "cause for the default and prejudice from a violation of federal law," *Martinez v. Ryan*, 566 U.S. 1, 10 (2012), neither of which Petitioner argues, much less demonstrates, occurred here.  Petitioner's Third Ground for habeas relief therefore should be DISMISSED as to Petitioner's challenge to Trim's trial testimony.

Petitioner also challenges Justice Dinolfo's denial of Petitioner's objection at trial to Barback's testimony regarding an event a few weeks prior to the August 25, 2012 incident in which Barback and one "A-Rock" were riding in a vehicle.  Trial Tr. at 793-794, 810-11.  According to Barback's trial testimony, Petitioner, driving in another vehicle, saw Barback and A-Rock and followed Barback's vehicle until Barback pulled the vehicle over to the side of the road.  *Id*. at 794.  Petitioner then stopped and exited his vehicle, opened the passenger door of Baback's vehicle, started beating A-Rock, and then punched Barback before leaving.  *Id*.  Respondent maintains that this evidentiary question is a matter of state law, particularly pursuant to *People v. Molineux*, 61 N.E. 286 (N.Y. 1901) ("*Molineux*"), which does not raise a federal constitutional issue for habeas review.[11]  Respondent's Memorandum at 24-29.

The Second Circuit instructs that

to establish that an erroneous application of state rules of evidence violates the federal guarantee of due process, [petitioner] must ... demonstrate that the state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process. That guarantee, in this case, is one of "fundamental fairness," a principle that the Supreme Court has "defined ... very narrowly."

---

[11] Although the trial transcript does not show any contemporaneous and specific objection to the introduction of this prior bad act into evidence, *see* Trial Tr. at 793-94, 810-11, Respondent does not argue against habeas relief on that basis.  Further, because the Appellate Division addressed the ground, *Mitchell*, 41 N.Y.S.3d at 807, which was raised by Petitioner on direct appellate review, Brief for Appellate, Dkt. 14-2 at 32-35, the ground is addressed here.

*Griggs v. Lempke*, 797 F. App'x 612, 615 (2d Cir. 2020) (quoting *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990))).  "Merely showing that the state court admitted evidence in violation of state rules of evidence is not enough, for such a state court decision on state law, even if erroneous, is not an independent ground for the writ of habeas corpus to issue under AEDPA."  *Id*.  A habeas petitioner must instead "demonstrate that the effect of the admission of [the challenged evidence] was so prejudicial to his defense that he was deprived of due process *and* he must identify a Supreme Court case that clearly establishes that the admission of [such] evidence . . . constitutes a violation of the Fourteenth Amendment."  *Evans*, 712 F.3d at 133 (italics in original).

In the instant case, however, Petitioner points to no Supreme Court case establishing the admission of evidence of a prior bad act establishes a due process violation, nor has the court's research identified any such case where evidence of a prior bad act, allowed into evidence only to establish jealousy was a motivating factor for the petitioner to commit the criminal acts charged, rather than a propensity for violence, as the Appellate Division observed, *Mitchell*, 41 N.Y.S.3d at 807, was held to violate due process.  Accordingly, Petitioner's Third Ground with respect to the evidence admitted at trial that Petitioner engaged in an act of violence toward Barback and her friend, A-Rock, several weeks prior to the incident should be DISMISSED.

### D.    Weight of the Evidence

In his Fourth Ground, Petitioner argues his conviction of intentional murder is against the weight of the evidence because it was Hillyard, not Petitioner, who shot Groat and there was no direct evidence that Petitioner was an accessory to the

intentional shooting by Hillyard.  Petition, Fourth Ground.  In opposing this ground, Respondent argues the claim is not cognizable on federal habeas review, Respondent's Memorandum at 29-30, and, alternatively, the claim is meritless insofar as it can be construed as challenging as legally insufficient the trial evidence for intentional murder. *Id*. at 30-33.

As Respondent argues, Respondent's Memorandum at 29-30, the question of the weight of the evidence is a question of state law, which precludes a federal habeas court from its review.  *McKinnon v. Superintendent, Great Meadows Corr. Facility,* 422 Fed. Appx. 69, 75 (2d Cir.2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus . . . ." (citing cases including, *inter alia*, *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("federal habeas corpus relief does not lie for errors of state law.") (internal quotation omitted))).  Petitioner's Fourth Ground should thus be DISMISSED for failing to assert a claim cognizable on federal habeas review.

Alternatively, as Respondent argues, Respondent's Memorandum at 30-33, the claim lacks merit.  "The standard for assessing the sufficiency of the evidence to support a guilty verdict is well settled, and it is the same under both Federal and New York state law: The reviewing court is limited to asking whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Klosin v. Conway*, 501 F. Supp. 2d 429, 440 (W.D.N.Y. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (italics in original)).  In making this evaluation, "this [c]ourt must defer to the jury's assessment of credibility."  *Cruz v. Giambruno*, 2009 WL 2928956, *4

(W.D.N.Y. 2009).  Further, a habeas petitioner "bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (italics in original).

In considering the sufficiency of the evidence supporting a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).") (footnote omitted).  Pursuant to New York Penal Law § 125.25[1], "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person . . . . ."  As the Appellate Division observed, Petitioner was "convicted of acting in concert with two others in the shooting death of the victim, a man the assailants mistakenly believed was having a relationship with the mother of [Petitioner's] children." *Mitchell*, 41 N.Y.S.3d at 807.  Viewing the evidence at trial in a light most favorable to the prosecution establishes that a rational trier of fact could have found the essential elements of intentional murder

Specifically, Barback's trial testimony that Petitioner mentioned seeing "Jake's Batman car" in front of Cordial on August 25, 2012, Trial Tr. at 775-76, places Petitioner at the scene of the incident.  Petitioner's statements to Barback while Barback drove Petitioner to his mother's house after the incident on August 25, 2012, that Petitioner tried to rob and shoot the victim, who Petitioner mistakenly believed was Trim, but the gun did not discharge, *id*. at 776-77, and Hillyard then took the gun from Petitioner and chased the victim, *id*. at 777, supports both that Petitioner was involved in the attempted robbery and possessed the weapon Hillyard used to kill the victim.  Other evidence

places Petitioner at the scene of the incident including identification by Barback, *id*. at 772, Trim, *id*. at 561, as well as Lazarus who identified the blue hoody Petitioner wore as the one Lazarus had given Petitioner a few weeks before the incident.  *Id*. at 848. Trim also described the assailant who initially pulled a gun on the victim as wearing a blue hoodie.  *Id*. at 562.  Security photos and video surveillance introduced into evidence also show Petitioner wearing the hoodie, and video from the used car lot's security camera show Petitioner and several others chasing the victim.  *Id*. at 1028. This is consistent with Petitioner's statements to Barback while Barback drove Petitioner to his mother's house indicating Petitioner was concerned that his actions with regard to the incident may have been captured on a security camera, causing Petitioner to wonder if he should "get rid of the clothes from the night" of the incident.  *Id*. at 774. Furthermore, evidence at trial established Petitioner had a motive to kill the victim, whom Petitioner believed was Trim, including Barback's testimony that although she was Petitioner's ex-girlfriend and the mother of his two children, *id*. at 763, she had been involved in a relationship with Trim for several months before the incident, *id*. at 764, described by Trim as a sexual relationship, *id*. at 571, and that Petitioner told Barback that he had "got your little boyfriend. . . . "  *Id*. at 774-76.  Barback's trial testimony about forcing Barback to pull her car over to the side of the road while she was driving with A-Rock in her vehicle several weeks prior to the incident, *id*. at 793-95, further establishes the motive for the incident as Petitioner's jealousy.

In short, Petitioner has failed to meet his "very heavy burden" of establishing the evidence adduced at trial was insufficient to support Petitioner's conviction of intentional murder.  *Fama*, 235 F.3d at 811.  The Appellate Division's decision on the merits of this

claim was thus neither contrary to, nor an unreasonable application of, federal law, nor was it unreasonable in light of the evidence presented to the trial court. Accordingly, Petitioner's Fourth Ground should be DISMISSED on its merits.

The Petition thus should be DISMISSED in its entirety.  Furthermore, as the court finds there is no substantial question presented for appellate review, a certificate of appealability should not issue.  28 U.S.C. § 2253, as amended by the AEDPA.

## **CONCLUSION**

Based on the foregoing Petitioner's Motion (Dkt. 35) is DENIED with prejudice; the Petition should be DISMISSED; the Clerk of Court should be directed to close the file.

SO ORDERED, as to Petitioner's Motion.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted as to the merits of the Petition,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 16th, 2022
            Buffalo, New York

**Petitioner is advised that any appeal of this Decision and Order must be taken by filing written objection with the Clerk of the Court not later than 14 days after service of this Decision and Order in accordance with Fed.R.Civ.P. 72(a).**

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.  Pursuant to Fed.R.Civ.P. 72(a), Petitioner shall have fourteen (14) days from service of this Decision and Order to file written objections with the District Judge.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,*  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Petitioner and to the attorneys for the Respondent.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 16th, 2022
                    Buffalo, New York